SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
WYNTER L. DEAGLE, Cal Bar No. 296501
wdeagle@sheppard.com
KRISTIN P. HOUSH, Cal Bar No. 286651
khoush@sheppard.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: 858.720.8900
Facsimile: 858.509.3691

LAUREN A. HOWES, Cal Bar No. 359992
lhowes@sheppard.com
501 West Broadway, 18th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
Facsimile: 619.234.3815

Attorneys for Defendant Landry's, LLC d/b/a Landry's, Inc. (erroneously sued as Landry's Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

CARLOS CAMPOS and JENNIE CORONA-CANTU, individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

LANDRY'S INC.,

Defendant.

Case No. 4:26-cv-04608-JST

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Filed concurrently with Request for Judicial Notice, Declarations of Kristin Housh, Steve Scheinthal, and Tim Donovan, and [Proposed] Order*

Date: November 5, 2026
Time: 2:00 p.m.
Crtrm.: 6

Judge: Jon S. Tigar

## NOTICE OF MOTION & MOTION TO DISMISS

PLEASE TAKE NOTICE that, on November 5, 2026, at 2:00 p.m., before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, Oakland Division, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland CA 94612, Defendant Landry's, LLC (erroneously sued as "Landry's Inc."), will and hereby does, move this Court for an order to dismiss the Complaint filed by Plaintiffs Carlos Campos and Jennie Corona-Cantu (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, and all causes of action therein alleged against Defendant pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(1) for lack of standing, 9(b) for failure to satisfy the heightened pleading standard, and 12(b)(6) for failure to state a claim. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, all pleadings and other papers on file in this action, and such other matters as may properly come before the Court.

## ISSUES PRESENTED

1. Whether Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Defendant.

2. Whether Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

3. Whether Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 9(b) for failure to satisfy the heightened pleading standard.

4. Whether Plaintiffs' claims must be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Dated: July 17, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Kristin P. Housh*

WYNTER L. DEAGLE
KRISTIN P. HOUSH
LAUREN A. HOWES
Attorneys for Defendant, Landry's, LLC d/b/a Landry's, Inc. (erroneously sued as Landry's Inc.)

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

A. Defendant Landry's, LLC ..... 1

B. The Websites and Claims ..... 2

III. LEGAL STANDARD ..... 3

IV. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION ..... 3

V. PLAINTIFFS' CLAIMS ARE TIME-BARRED ..... 6

VI. PLAINTIFFS DO NOT MEET RULE 9(b)'S PLEADING STANDARD ..... 7

VII. PLAINTIFFS LACK ARTICLE III STANDING ..... 8

A. Plaintiffs Have Not Alleged a Privacy Interest ..... 9

B. Plaintiffs Have Not Alleged a Highly Offensive Intrusion ..... 10

VIII. ALL CLAIMS MUST BE DISMISSED UNDER RULE 12(b)(6) ..... 11

A. Claims 1 and 2: Invasion of Privacy and Intrusion Upon Seclusion ..... 11

1. Plaintiffs have not alleged a reasonable expectation of privacy ..... 11

2. Plaintiffs have not alleged a highly offensive intrusion ..... 12

B. Claim 3: Wiretapping in Violation of CIPA (California Penal Code § 631) ..... 12

1. Plaintiffs have not alleged interception of "contents" of communications ..... 13

2. Plaintiffs have not alleged an interception in transit ..... 14

a. The Complaint Does Not Make Interception Allegations Against Defendant ..... 14

b. The Complaint Contains Inadequate Allegations of Interception in Transit ..... 15

3. Plaintiffs have not alleged Defendant purposefully aided and abetted ..... 16

C. Claim 4: Use of a Pen Register (California Penal Code § 638.51) ..... 17

1. Section 638.51 applies only to telephone communications ..... 17

2. Plaintiffs have not alleged use of a "trap and trace" device .......................18

D. Claim 5: Common Law Fraud, Deceit, and/or Misrepresentation ..........................20

E. Claim 6: Unjust Enrichment.........................................................................20

IX. CONCLUSION .........................................................................................20

TABLE OF AUTHORITIES

Page(s)

Cases

*Adler v. Community.com, Inc.*
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......... 14

*In re Apple Privacy Litigation*
824 F. Supp. 3d 888 (N.D. Cal. 2026) .......... 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 3, 16

*Augustine v. Great Wolf Resorts, Inc.*
2024 WL 3450967 (S.D. Cal. July 18, 2024) .......... 16

*Briskin v. Shopify, Inc.*
135 F.4th 739 (9th Cir. 2025) .......... 3, 4, 5

*Brodsky v. Apple Inc.*
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 6, 14

*Brown v. Google LLC*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 6

*Byars v. Sterling Jewelers, Inc.*
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 9

*California Crane Sch., Inc. v. Google LLC*
722 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 20

*Cheung v. Slickdeals*
2026 WL 1872831 (C.D. Cal. June 29, 2026) .......... 9

*Cody v. Ring LLC*
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 16

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 13

*Daimler AG v. Bauman*
571 U.S. 117 (2014) .......... 3, 4

*de Ayora v. Inspire Brands, Inc.*
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......... 8

*Diamond Alt. Energy, LLC v. Env't Prot. Agency*
606 U.S. 100 (2025) .......... 9

*Doe v. Geller*
533 F. Supp. 2d 996 (N.D. Cal. 2008) .................................................................. 4

*ESG Cap. Partners, LP v. Stratos*
828 F.3d 1023 (9th Cir. 2016).......................................................................... 20

*Esparza v. UAG Escondido A1 Inc.*
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ...................................................... 16

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020)....................................................................... 10, 11

*Forouzesh v. Starbucks Corp.*
2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) .................................................... 20

*Fox v. Ethicon Endo-Surgery, Inc.*
35 Cal. 4th 797 (2005)................................................................................... 6, 7

*Graham v. Noom, Inc.*
533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................ 14

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................. 11

*Hartley v. Urban Outfitters, Inc.*
740 F. Supp. 3d 410 (E.D. Pa. 2024) .................................................................. 10

*Herzman v. Smile Brands Inc.*
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ....................................................... 9

*Hill v. NCAA*
7 Cal. 4th 1 (1994)............................................................................................ 11

*Hubbard v. Google LLC*
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........................................................ 11

*Hungerstation LLC v. Fast Choice LLC*
2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ...................................................... 4, 5

*Impossible Foods Inc. v. Impossible X LLC*
80 F.4th 1079 (9th Cir. 2023)................................................................................ 4

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009)........................................................................... 3, 7

*King v. Hard Rock Cafe Int'l (USA), Inc.*
2025 WL 1635419 (E.D. Cal. June 9, 2025)......................................................... 13

*Kishnani v. Royal Caribbean Cruises Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025) ...................................................... 19

*Kisil v. Illuminate Educ., Inc.*
2025 WL 2589000 (9th Cir. Sept. 8, 2025) .......... 9

*Kline v. Iovate Health Sciences*
2017 WL 1135580 (S.D. Cal. Mar. 27, 2017) .......... 6

*Licea v. American Eagle Outfitters*
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 16

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 12

*Mikulsky v. Bloomingdale's, LLC*
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 14

*Mirmalek v. Los Angeles Times Commc'ns LLC*
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 19

*Mitchener v. CuriosityStream, Inc.*
815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 19

*Neubronner v. Milken*
6 F.3d 666 (9th Cir. 1993) .......... 8

*Phillips v. U.S. Customs and Border Protection*
74 F.4th 986 (9th Cir. 2023) .......... 12

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... 9, 10

*Ramirez v. Bank of America, N.A.*
634 F. Supp. 3d 733 (N.D. Cal. 2022) .......... 8

*In re Saldana*
122 F.4th 333 (9th Cir. 2024) .......... 19

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797 (9th Cir. 2004) .......... 4

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*
733 F.3d 1251 (9th Cir. 2013) .......... 3

*Shah v. Fandom, Inc.*
754 F. Supp. 3d 924 (N.D. Cal. Oct. 9, 2025) .......... 19

*Shah v. Hilton Worldwide Holdings, Inc.*
2025 WL 1683577 (N.D. Cal. June 11, 2025) .......... 5

*Shah v. MyFitnessPal, Inc.*
824 F. Supp. 3d 906 (N.D. Cal. Jan. 27, 2026) .......... 7, 13

*Smith v. YETI Coolers, LLC*
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 16

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .......... 3, 9

*St. Aubin v. Carbon Health Technologies, Inc.*
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 12, 14

*Tavernetti v. Super. Ct.*
583 P.2d 737 (Cal. 1978) .......... 12

*Thele v. Google LLC*
2026 WL 1970746 (N.D. Cal. July 7, 2026) .......... 9

*Torres v. Seatgeek*
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 9

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .......... 3, 9

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) .......... 8

*In re Vizio, Inc., Consumer Priv. Litig.*
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 14

*In re Yahoo Mail Litig.*
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 11

*Yale v. Clicktale, Inc.*
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .......... 14

*Yoon v. Lululemon USA, Inc.*
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 14

*In re Zynga Priv. Litig.*
750 F.3d 1098 (9th Cir. 2014) .......... 13, 14

<u>Statutes</u>

Cal. Civ. Code § 1798.100 .......... 18

Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G) .......... 18

Cal. Penal Code § 631 .......... 12

Cal. Penal Code § 631(a) .......... 12, 14

Cal. Penal Code § 631(a)(1) .......... 12

Cal. Penal Code § 631(a)(2) ... 12
Cal. Penal Code § 631(a)(3) ... 12
Cal. Penal Code § 631(a)(4) ... 12
Cal. Penal Code § 632.01 ... 17
Cal. Penal Code § 638.50 ... 17, 18
Cal. Penal Code § 638.50(b) ... 18, 19
Cal. Penal Code § 638.51 ... 17, 18
Cal. Penal Code § 638.51(a) ... 18
Cal. Penal Code § 638.52 ... 17, 18
Cal. Penal Code § 638.52(d) ... 17
Cal. Penal Code § 638.52(d)(3) ... 17
Cal. Penal Code § 638.53 ... 17, 18

Other Authorities

Assembly Bill 929 ... 18
Fed. R. Civ. P. 12(b)(6) ... 1, 3

## I. INTRODUCTION

Plaintiffs Carlos Campos and Jennie Corona-Cantu (collectively, "Plaintiffs") bring this putative class action against Defendant based on the following allegation: that when they visited the Bubba Gump Shrimp Company ("Bubba Gump") website at an undisclosed time during the past four years and opted out of certain cookies, Defendant continued to permit those third-party cookies. But these bare allegations cannot sustain this suit. This case should be dismissed for four reasons.

First, this Court lacks personal jurisdiction over Defendant. Defendant Landry's, LLC is a Delaware limited liability company with its principal place of business in Texas. Plaintiffs' attempt to manufacture jurisdiction in California by pointing to third party server locations and geolocation data does not establish the purposeful direction at California required for personal jurisdiction.

Second, Plaintiffs lack Article III standing. Neither Plaintiff alleges that he or she submitted personal information to Defendant, created an account, nor had any identifiable profile built about them. Their alleged harm—that third-party cookies were placed on their devices during routine browsing of a restaurant's website—is not the kind of concrete injury the Constitution requires.

Third, Plaintiffs' claims are time-barred. Both Plaintiffs allege they visited the Bubba Gump website "on one or more occasions during the last four years," without identifying any specific date. Because the statute of limitations periods for Plaintiffs' privacy tort and CIPA claims are shorter than four years, the Complaint on its face fails to establish that Plaintiffs' claims are timely.

Finally, Plaintiffs' causes of action also fail to satisfy Rule 12(b)(6)'s standard for several reasons. These deficiencies include: (1) failing to allege a privacy interest or highly offensive intrusion, (2) failing to plead the "contents" of any communication were intercepted "in transit" pursuant to CIPA, (3) pleading a pen register claim in addition to a wiretap claim when those claims are mutually exclusive, (4) failing to allege when their claims arose in violation of Fed. R. Civ. P. 9(b), and (5) failing to allege Defendant was unjustly enriched at Plaintiffs' expense. Accordingly, Defendant is entitled to dismissal of all Plaintiffs' claims.

## II. FACTUAL BACKGROUND

### A. Defendant Landry's, LLC

Defendant, erroneously named as "Landry's Inc.," is "Landry's, LLC," a Delaware limited

liability company with its principal place of business in Texas. (Decl. of Steve Scheinthal ("Scheinthal Decl.") at ¶ 3.) The sole member of Landry's, LLC is Fertitta Entertainment, LLC, a Nevada limited liability company with its principal place of business in Texas. (*Id*. at ¶ 5(a).) Landry's, LLC's ultimate owner, through a list of intermediary LLCs (none of which are organized in California), is Fertitta Entertainment, Inc., which is a Texas corporation. (*Id*. at ¶¶ 4–5.)

Defendant Landry's, LLC is the parent company of subsidiary restaurant entities Bubba Gump Shrimp Company; Chart House; Del Frisco's Grille; Del Frisco's Double Eagle Steakhouse; Horatio's; Joe's Crab Shack; Kincaid's Fish, Chop & Steakhouse; Mastro's Restaurants; McCormick and Schmick's Grille; Morton's the Steakhouse; Peohe's; Rainforest Café; Rusty Pelican; and Skates on the Bay. None of these subsidiaries are incorporated in or maintain their principal place of business in California. (*Id*. at ¶ 11.) Although some of these subsidiaries operate restaurant locations within California, Defendant (the parent company) does not own, manage, or otherwise operate any of the restaurants in California. (*Id*. at ¶ 12.) Instead, the ownership, management, and operation of the restaurants is delegated to the respective subsidiaries. (*Id*.)

**B. <u>The Websites and Claims</u>**[1]

Like countless other websites, the websites in Defendant's subsidiary restaurant portfolio employ third party cookies. (Compl. ¶¶ 1–2). The websites display a cookie consent banner upon a user's visit, informing users that the site uses cookies and shares information about website use with advertising and analytics partners. (Compl. ¶ 1). The consent banner enables users to access a cookie preference window after selecting "Do Not Sell My Personal Information." (Compl. ¶¶ 1, 31–32). Through that preferences window, users can opt out of non-essential cookies. (Compl. ¶¶ 31–34).

Plaintiffs allege identical experiences with the Bubba Gump website: That at some undefined date and time "on one or more occasions within the last four years," Plaintiffs visited the Bubba Gump website. (Compl. ¶¶ 119, 129). When presented with the cookie consent banner, Plaintiffs clicked "Do Not Sell My Personal Information" and opted out of non-essential cookies. (Compl. ¶¶ 122–123, 132–133). Nevertheless, third-party cookies were allegedly employed to collect

[1] For purposes of this Motion only, Defendant sets forth the facts as alleged in the Complaint and the documents attached to the Complaint. Defendant does not concede they are accurate.

information from their devices. (Compl. ¶¶ 36–37, 125–126, 135–136). Plaintiffs claim they were harmed by a loss of "money and/or property," diminution in the value of their personal information, and loss of control over the dissemination and use of information about them. (Compl. ¶¶ 207–208). Though Plaintiffs purport to represent putative class members who visited these thirteen other websites, Plaintiffs only visited the Bubba Gump website. (Compl. ¶¶ 119–139).

## III. LEGAL STANDARD

In the absence of statutory personal jurisdiction, a nonresident defendant may only be haled into court in California if it has "minimum contacts" with the forum state sufficient to establish either general or specific jurisdiction. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025). General jurisdiction exists only where a defendant is incorporated or maintains its principal place of business in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction requires the plaintiff to demonstrate that the defendant purposefully directed its activities at the forum and that the claims arise out of those activities. *Briskin*, 135 F.4th at 750–51. The plaintiff bears the burden of satisfying both prongs. *Id.* at 751.

Where claims sound in fraud or are premised on a unified course of fraudulent conduct, Rule 9(b)'s heightened standard applies, requiring a plaintiff to plead the "who, what, when, where, and how" of the alleged misconduct with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Article III standing is a jurisdictional prerequisite. A plaintiff must demonstrate a concrete, particularized injury in fact—actual or imminent, not conjectural or hypothetical—for each claim and each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations do not suffice. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

## IV. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION

Plaintiffs must allege either general personal jurisdiction or specific personal jurisdiction for

this Court to have jurisdiction over Defendant. *Briskin,* 135 F.4th at 750. Defendant Landry's is an LLC organized in Delaware that maintains its principal place of business in Texas. (Scheinthal Decl. at ¶ 3.) Its members trace back through Nevada and Texas—never touching California. (*Id*. at ¶¶ 4–5.) As a result, general jurisdiction is inapplicable. *Daimler AG*, 571 U.S. at 137 (internal citation omitted) (a corporation is generally "at home" only in its state of incorporation and principal place of business); *Impossible Foods Inc. v. Impossible X LLC,* 80 F.4th 1079, 1086 (9th Cir. 2023) (applying *Daimler*'s framework to an LLC).

Specific jurisdiction fares no better. Plaintiffs bear the burden of demonstrating purposeful direction.[2] *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). Setting aside Plaintiffs' boilerplate jurisdictional claims,[3] the Complaint only offers two types of specific jurisdictional allegations: (1) server location and (2) geolocation. Neither suffices.

First, Plaintiffs allege that data transmissions are "routed through servers located in California." (Compl. ¶ 12). But those servers belong to third parties—not Defendant—and a defendant's use of third-party servers in California does not confer personal jurisdiction. *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020) ("[D]istrict courts in this circuit have held that the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction"); *cf. Doe v. Geller,* 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008) (finding personal jurisdiction based on the "happenstance" of the locations of "internet companies" to be "unreasonable"). Granting jurisdictional weight to third-party server locations

[2] To judge purposeful direction in tort-based claims, courts in the Ninth Circuit apply the "*Calder* effects test," which requires showing the defendant: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Briskin*, 135 F.4th at 751. Because the first element of the specific jurisdictional analysis (purposeful direction) and the second element of the *Calder* effects test (express aiming) overlap, Defendant addresses them as one.

[3] Such allegations include: (1) "As part of its regular course of business, Defendant targets California consumers," and (2) "Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and services provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California." (Compl. ¶¶ 113, 11).

would transform this Court into an "international court of internet law." *Hungerstation LLC*, 2020 WL 137160, at *6 (internal citation omitted).

Second, as to geolocation, Plaintiffs allege the Bubba Gump website "immediately detected that [he/she] was a visitor from California" (Compl. ¶¶ 121, 131), and that Defendant "is capable of" determining a user's presence in California based on IP address information. (Compl. ¶¶ 18–20, 28.) These allegations are factually wrong. Landry's, LLC does not operate, maintain, or run any geolocation detection system on any of the 14 websites identified in the Complaint. Landry's, LLC does not receive, store, or maintain individual-level geolocation or location data identifying the location of any particular website user or device from any source. Landry's, LLC does not maintain or store server logs or any other source containing individual IP addresses, and does not query, process, or cross-reference individual visitor IP addresses against any geolocation database to determine the physical location of any particular website visitor or device. In short, Landry's, LLC does not operate, maintain, or utilize any system, software, or tool that identifies, records, or processes the geographic location of any individual user; it is not able to identify the location of any individual user of any of the 14 websites identified in the Complaint. (Donovan Decl. ¶¶ 4–8.)

A website's nationwide accessibility, standing alone, does not subject its owner-operator to personal jurisdiction wherever the site is visited. "Something more" is required, but Plaintiffs have not alleged "something more." *Briskin,* 135 F.4th 739, 757 at n.16. In *Briskin*, the Court found personal jurisdiction when the plaintiffs alleged the defendant, *while knowing* the plaintiffs were shopping from California, placed cookies on the plaintiffs' devices to collect data *the defendant* then compiled into a consumer profile that *the defendant* sold to California merchants for profit. *Briskin,* 135 F.4th at 746. That conduct—defendant's own deliberate targeting of California users, creation of California-specific consumer profiles, and monetization of that data through California commercial relationships—was the "something more" that anchored jurisdiction.

Here, Plaintiffs have not alleged and/or the factual record affirmatively negates that Defendant collected any geolocation data, compiled any consumer profiles, or sold any California-user data to anyone. The conduct that gave rise to jurisdiction in *Briskin* is entirely absent here. *Shah v. Hilton Worldwide Holdings, Inc.*, 2025 WL 1683577, at *2 (N.D. Cal. June 11, 2025), is directly

on point: the court distinguished *Briskin* and dismissed for lack of personal jurisdiction where plaintiffs made only third-party cookie allegations and did not allege that the defendant itself created consumer profiles. Plaintiffs here have not even matched the pleading threshold that *Shah* found insufficient. And, unlike in *Shah*, the Donovan Declaration establishes that the geolocation capabilities Plaintiffs assume Defendant possesses do not exist.

Because Plaintiffs have failed to plead—and the record affirmatively refutes—that Defendant purposefully directed any tortious conduct at California, this Court lacks personal jurisdiction over Defendant, and the Complaint should be dismissed under Rule 12(b)(2).

## V. PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs' CIPA, invasion of privacy, and intrusion upon seclusion claims are time barred. Plaintiffs allege they visited the Bubba Gump website on "one or more occasions during the last four years." (Compl. ¶¶ 119, 129). By failing to provide meaningful specificity regarding the timing of their visits, Plaintiffs have alleged a set of facts in which their claims may have accrued earlier than two years before the filing of the Complaint on May 15, 2026. *See Kline v. Iovate Health Sciences*, 2017 WL 1135580, at *3 (S.D. Cal. Mar. 27, 2017) (dismissing claims with three-year statute of limitations because allegations that plaintiff purchased products "within the last four years" established the claims "could be time barred").

CIPA claims are subject to a one-year statute of limitations. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). Invasion of privacy and intrusion upon seclusion claims have a two-year statute of limitations. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021). Accordingly, because the Complaint was not filed until May 15, 2026, Plaintiffs' claims are time-barred unless: (1) Plaintiffs can affirmatively allege they accrued on or after May 15, 2024 (with respect to Plaintiffs' privacy tort claims) or May 15, 2025 (with respect to Plaintiffs' CIPA claims) or (2) the statutes of limitation were tolled.

Plaintiffs allege tolling based on the discovery rule. (Compl. ¶ 15). For Plaintiffs to rely on the discovery rule to postpone accrual of their claims, the complaint must "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)

(citation omitted). Plaintiffs plead neither.

Plaintiffs allege they were entirely unaware of the facts underlying their claims "until a later investigation [by Plaintiffs' counsel] revealed it." (Compl. ¶ 15). This does not satisfy the requirement to plead facts supporting the time and manner of discovery. Plaintiffs fail to allege *when* they learned this information from counsel. Similarly, Plaintiffs do not allege the manner of discovery—how and which of Plaintiffs' visits to the Bubba Gump website were identified by counsel as giving rise to the claims in the Complaint.

Additionally, Plaintiffs' deficient pleading on the first prong dooms the second. The word "earlier" is inherently relative; it requires a temporal reference point to be meaningful. It is impossible for Plaintiffs to adequately plead "the inability to have made earlier discovery" when Plaintiffs have not described when this discovery was made in the first place.

Finally, Plaintiffs provide very little support for their inability to discover their claims. In assessing the sufficiency of the allegations of delayed discovery, the burden is on the plaintiff to show diligence. *Fox*, 35 Cal. 4th at 808. Here, Plaintiffs exercised no diligence whatsoever—they learned of their claims only because counsel affirmatively reached out to them.

These allegations are insufficient to allege the application of the discovery rule.

## VI. PLAINTIFFS DO NOT MEET RULE 9(b)'S PLEADING STANDARD

Plaintiffs' claims fail under Fed. R. Civ. P. 9(b). Rule 9 requires that fraud allegations "be accompanied by 'the who, what, when, where and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (9th Cir. 2009). Here, Plaintiffs fail to plead specific factual allegations detailing *when* and *how* they were allegedly defrauded.

As to the *when*, Plaintiffs allege only that they visited the Bubba Gump website "on one or more occasions during the last four years." (Compl. ¶¶ 119, 129.) A four-year window is not particularized pleading. *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 921 (N.D. Cal. Jan. 27, 2026) (allegations of website visits "in the last four years" failed Rule 9(b) because that level of generality fails to provide the defendant with notice of the misconduct alleged).

As to the *how*, nearly all allegations in the Complaint are alleged "on information and belief" based on counsel's expert's investigation at an undisclosed time. This creates two independent

failures. First, "[a]llegations of fraud based on information and belief do not satisfy Rule 9(b)." *Ramirez v. Bank of America, N.A.*, 634 F. Supp. 3d 733, 740 (N.D. Cal. 2022). Second, because Plaintiffs concede that website programming "change[s] over time" (Compl. ¶¶ 128, 138), nothing in the Complaint establishes that the cookie consent banner described—or the Privacy Policy referenced—reflects what Plaintiffs actually encountered on their undisclosed visit date. The information-and-belief exception does not rescue Plaintiffs here: that exception applies only to matters within the opposing party's knowledge, *Ramirez*, 634 F. Supp. 3d at 740, but the relevant knowledge—the when and how of Plaintiffs' own visits—lies entirely with Plaintiffs. *See de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *4 (N.D. Cal. Dec. 22, 2025) (where the class period "stretche[d] four years" and "cookie banners were changed during the accused period," plaintiffs failed to give notice of the "when" or "where" under Rule 9(b)).

These deficiencies infect the entire Complaint, not just the fraud count. Where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," all claims are subject to Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). Here, every claim rests on the alleged deception that Plaintiffs could reject non-essential cookies when they could not. *See de Ayora*, 2025 WL 3707561, at *3 (applying Rule 9(b) to all claims based on allegations that defendant falsely represented users could decline cookies). Plaintiffs' complete lack of specificity fails to give Defendant "notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Accordingly, all of Plaintiffs' claims should be dismissed.

## VII. PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs' standing collapses under the weight of their own pleading. The Complaint defines "Private Communications" expansively to encompass browsing history, visit history, website interactions, user input data, demographic information, shopping behaviors, device information, referring URLs, session information, user identifiers, and geolocation data. (Compl. ¶ 25.) Yet Plaintiffs describe themselves as doing nothing more than visiting the Bubba Gump website and interacting with the cookie banner—never filling out a form, entering a name, providing payment

information, creating an account, or transmitting any personally identifiable information. The universe of data Plaintiffs claim Defendant was capable of collecting is vast; the universe of data Plaintiffs allege they actually provided through their own identified website activity is zero.

Article III requires "injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 111 (2025). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339; *TransUnion*, 594 U.S. at 431. In the privacy context, courts assess whether the alleged injury has a "close relationship" to a harm traditionally cognizable at common law, benchmarked in web-tracking cases to intrusion upon seclusion. *Popa v. Microsoft Corp.*, 153 F.4th 784, 789–92 (9th Cir. 2025); *Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025). Plaintiffs' generic claims of a "diminution of the value" of their personal information and loss of "ability to control dissemination" (Compl. ¶¶ 207, 152), untethered from any specific information collected or disclosed, are hypothetical and insufficient.

### A. <u>Plaintiffs Have Not Alleged a Privacy Interest</u>

Concrete injury requires each Plaintiff to identify what specific personal information he or she provided, why that information carries a protectable privacy interest, and how it was intercepted or improperly disclosed. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023). Plaintiffs have not done so. Both Plaintiffs visited the website "to seek and obtain information" and interacted with the cookie banner "consistent with an ordinary Website user" seeking information about "restaurant brand and menu options." (Compl. ¶¶ 119–120, 129–130.) That is the full extent of their alleged interaction.

Numerous courts have dismissed materially identical complaints on this precise defect. *See, e.g.*, *Thele v. Google LLC*, 2026 WL 1970746, at *2 (N.D. Cal. July 7, 2026) (allegations that technology "could be used" to track data insufficient); *Cheung v. Slickdeals*, 2026 WL 1872831, at *9 (C.D. Cal. June 29, 2026) (no standing without specific allegations as to what personal information was collected); *Torres v. Seatgeek*, 2026 WL 1495202, at *3–4 (N.D. Cal. May 28, 2026) (no standing where plaintiff did not allege he provided private information to the website); *Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (no standing

absent specific allegations of what information was transmitted and how it was linked to plaintiff as an identifiable individual).

Plaintiffs' capability-based allegations fare no better. "Allegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected." *Hartley v. Urban Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024). Without alleging that Plaintiffs transmitted personal information to Defendant that was actually intercepted or shared with third parties, there is no concrete injury.

The conjectural nature of Plaintiffs' alleged harm is further underscored by the source of the Complaint's allegations: 203 of its 223 paragraphs are based on the "investigation of Plaintiffs' counsel," not on Plaintiffs' own experience. (Compl. ¶ opening.) Plaintiffs identify no specific date of visit, acknowledge that website programming changes over time (Compl. ¶¶ 128, 138), and concede they learned of the alleged conduct only through counsel's undisclosed technical testing—potentially years after their actual visits. There is no basis to believe the screenshots in the Complaint reflect Plaintiffs' own user experience, and thus no basis to believe they reflect Plaintiffs' own harm. Because the Complaint reflects an account of Plaintiffs' expert's user experience, the best it can prove is hypothetical harms belonging to someone other than the named Plaintiffs—which cannot supply the plaintiff-specific, concrete, and particularized injury Article III demands.

### B. Plaintiffs Have Not Alleged a Highly Offensive Intrusion

Even if Plaintiffs had alleged a cognizable privacy interest, they must also allege a highly offensive intrusion. *Popa*, 153 F.4th at 791. Whether conduct is "highly offensive" requires "holistic consideration" of the "likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020).

In *Popa*, the Ninth Circuit held that a pet store website's collection of 30 categories of data—including visit date, device and browser type, operating system, country, mouse movements, screen swipes, text inputs, and scroll depth—did not constitute a concrete injury because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information" collected. 153 F.4th at

786–87, 791. *Contrast In re Facebook Internet Tracking Litig.*, 956 F.3d at 598–99 (finding "cradle-to-grave" profiles drawn from plaintiffs' browsing history across the internet sufficient to confer standing). Plaintiffs here allege visits to a single restaurant website, no cross-site tracking, no sustained surveillance, no identity-linked profile building, and no sensitive or embarrassing information. This is precisely the routine browsing-data collection *Popa* held insufficient—far removed from the profile-building found actionable in *In re Facebook*. When allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests," the offensiveness of the invasion may be adjudicated as a matter of law. *Hill v. NCAA*, 7 Cal. 4th 1, 40 (1994). Plaintiffs' standing fails on this ground as well.

## VIII. ALL CLAIMS MUST BE DISMISSED UNDER RULE 12(b)(6)

### A. <u>Claims 1 and 2: Invasion of Privacy and Intrusion Upon Seclusion</u>

Because claims for intrusion upon seclusion and invasion of privacy have "similar elements," courts often "consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601. Plaintiffs fail to plausibly allege either element.

#### ***1. Plaintiffs have not alleged a reasonable expectation of privacy***

Just as Plaintiffs failed to allege a privacy interest for standing purposes, they cannot allege a reasonable expectation of privacy based on the web activities they allege—visiting a restaurant website and engaging with the cookie banner.

California law imposes a high bar for invasion of privacy claims—one that Plaintiffs cannot meet, even at the pleading stage, without concrete allegations of sensitive data collection. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) ("The California Constitution sets a 'high bar' for establishing an invasion of privacy claim"). Absent the unauthorized collection of *sensitive* information, website browsing does not give rise to a reasonable expectation of privacy. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022) (no reasonable expectation of privacy "when the data collection is within users' common-sense expectation or when the information is not sensitive"); *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by

tracking users across the internet, and a reasonable user should expect as much").

Browsing a restaurant website is not an inherently private affair, and as discussed *supra*, Plaintiffs fail to allege they meaningfully interacted with the website, tracking across multiple websites, sustained surveillance over time, or the creation of a consumer profile as to them.

#### *2. Plaintiffs have not alleged a highly offensive intrusion*

The intrusion alleged is likewise not highly offensive for the same reasons set forth in Section VII.B above: Plaintiffs identify no embarrassing, sensitive, or identity-linked information that was submitted, tracked, or shared, and the alleged collection of routine browsing data from a single restaurant website falls squarely within what *Popa* held insufficient. *See also Phillips v. U.S. Customs and Border Protection,* 74 F.4th 986, 995–96 (9th Cir. 2023) (collection of "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations" not "so sensitive that another's access to that information 'would be highly offensive to a reasonable person'"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (holding disclosure of user's browsing history, URLs, and unique ID was not highly offensive). This remains true even if the collection of information is in breach of a privacy policy.

### B. <u>Claim 3: Wiretapping in Violation of CIPA (California Penal Code § 631)</u>

Plaintiffs do not plausibly allege a cause of action under CIPA section 631(a). Section 631(a) provides four distinct bases for liability. Cal. Penal Code Section 631(a); *see Tavernetti v. Super. Ct.*, 583 P.2d 737, 741 (Cal. 1978). Plaintiffs fail to specify which of the four clauses of Section 631(a) they allege Defendant violated. Nevertheless, Sections 631(a)(2), 631(a)(3), and 631(a)(4)[4] all require pleading two common elements: (1) that the contents of a communication were read or learned, and (2) that such reading or learning occurred while the communication was in transit. Because Plaintiffs have not adequately alleged the "contents" or "in transit" elements, their CIPA claims fail whether brought under Sections 631(a)(2), 631(a)(3), or 631(a)(4). Additionally, to the extent Plaintiffs proceed under Section 631(a)(4), that claim independently fails because Plaintiffs

[4] Cal. Penal Code § 631(a)(1) is omitted because it is clearly inapplicable, as it does not apply to internet communications. *See, e.g., St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024).

have not alleged that Defendant had a purpose of aiding conduct that violates the wiretapping statute.

### *1. Plaintiffs have not alleged interception of "contents" of communications*

Plaintiffs' Section 631(a) claim fails at the threshold because Plaintiffs do not plausibly allege Defendant (or third parties) intercepted the "contents" of any electronic communication—i.e., "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs' allegations are deficient in two respects: (1) the specific examples derive from their counsel's investigation rather than their own experience, and (2) the data categories Plaintiffs specifically allege constitute "record information," not "contents."

As previously discussed, the Complaint is largely based on Plaintiffs' expert's analysis of the websites at issue on an undisclosed date. This analysis occurred perhaps years from Plaintiffs' access of the Bubba Gump website and encompassed websites that we know from the Complaint *Plaintiffs never visited*. Accordingly, it is impossible for the Complaint to reflect the "contents" of any communication Plaintiffs themselves sent or received.

Courts dismiss Section 631(a) claims for failure to allege interception of the "contents" of a communication when, as here, plaintiffs fail to allege what information they submitted to a website—even when they describe, in general or hypothetical terms, how the tracking technology at issue works. *See, e.g., Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023) (finding plaintiffs failed to allege "contents" because they did not allege use of the "book appointment" tool hypothetically described in the complaint or "explain what personal or health information they entered on the webpage"); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 919 (N.D. Cal. Jan. 27, 2026) (finding plaintiffs failed to allege "they personally engaged in any communications with the websites whose content could have been intercepted"); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4–5 (E.D. Cal. June 9, 2025) (dismissing claim where plaintiff did "not allege she conducted the searches or visited the webpages provided in the examples").

The twelve categories of information Plaintiffs allege could be collected—browsing history, visit history, IP addresses, geolocation data, device information, session information, user identifiers, and browser and operating system data—are not "contents" within the meaning of

Section 631(a); they are record information that does not convey the "substance, purport, or meaning" of any communication. *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing Section 631(a) claim for failure to allege content was intercepted when plaintiffs admitted IP addresses, locations, browser types, and operating systems were non-content information and only vaguely alleged "other website interactions"); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021); *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021). To the extent some categories—such as website interactions, user input data, shopping behaviors, or referring URLs—could arguably qualify as contents, Plaintiffs have not alleged that any such data was actually collected from them; neither Plaintiff claims to have clicked on any link, entered any text, performed any search, viewed any product, added any item to a cart, or otherwise engaged with the Bubba Gump website in any manner that would generate such information.

Under any subsection of Section 631(a), Plaintiffs' claim fails because they have not alleged Defendant or third parties have intercepted the "contents" of Plaintiffs' communications.

### ***2. Plaintiffs have not alleged an interception in transit***

Plaintiffs also fail to plead facts showing Defendant "intercepted" a communication while "in transit." Cal. Penal Code Section 631(a). Interception must occur while the communication is being actively transmitted; once it reaches its recipient, it is no longer in transit. *See Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (communication must be "acquired during transmission").

#### **a. <u>The Complaint Does Not Make Interception Allegations Against Defendant</u>**

Although a plaintiff need not prove at the pleading stage exactly how and when their communications were intercepted, they must provide the defendant with fair notice of how and when they believe the defendant—or a third party—intercepted those communications. *St. Aubin,* 2024 WL 4369675, at *6 (internal citations and quotations omitted); *see also In re Vizio, Inc., Consumer*

*Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).

The Complaint contains no allegations whatsoever that *Defendant* intercepted communications in transit; indeed, the header cabining Plaintiffs' "in transit" allegations is titled "The *Third Parties* Intercept User Communications While in Transit." (Compl. ¶ 97). Because the Complaint contains no allegations whatsoever of Defendant's interception of communications in transit, Plaintiffs have not stated a claim as to either of Section 631(a)'s direct liability provisions ((a)(2) or (a)(3)). With no factual support, any such direct claims must be dismissed.

**b. <u>The Complaint Contains Inadequate Allegations of Interception in Transit</u>**

In an attempt to allege liability under Section 631(a)(4), Plaintiffs focus their "in transit" allegations against third parties rather than against Defendant. (Compl. ¶¶ 97–112). But again, their Complaint is based upon *counsel's* "information and belief" regarding how third party cookies operated at an undisclosed time that may or may not line up with Plaintiffs' website experience.

The Complaint attempts to satisfy the "in transit" element by asserting, on information and belief, that third parties intercept user communications while in transit by using real-time stream-processing "in flight" before storage. (Compl. ¶ 102). These conclusory allegations do not provide the "fair notice" *St. Aubin* requires. Viewed holistically, the Complaint's "in transit" theory rests on a cascade of unsupported inferences: that real-time stream processing is an industry-wide architectural feature; that examples of such platforms include Apache Flink, Kafka, and Amazon Kinesis (for Meta) and MillWheel and Google Cloud Dataflow (for Google); that, therefore, the third party cookies must have used some such platform; and that, therefore, Plaintiffs' communications must have been intercepted in transit. (Compl. ¶¶ 102, 107). Each step in that chain is pleaded on information and belief, and none of them is tethered to the named websites, the specific third-party integrations on those websites, or the specific transmissions made by either named Plaintiff.

Such allegations describe what third-party products are capable of in the abstract—generic product descriptions of industry-wide architectural features—rather than factual allegations about how those specific products were actually configured and deployed on the websites at issue. The

functionality descriptions in the Complaint are, by their own terms, explicitly non-specific. *See, e.g.,* Compl. ¶ 98 ("Transforming, for example, *may* involve . . . ") (emphasis added); Compl. ¶ 99 ("*Most* websites transmit the same user interaction twice") (emphasis added); Compl. ¶ 102 ("*Examples* of such platforms include Apache Flink, Kafka, and Amazon Kinesis") (emphasis added). What the Complaint actually pleads is that these technologies could work this way in some configurations, on some websites, at some time. That is precisely the type of speculation that is insufficient under *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 (pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Licea v. American Eagle Outfitters,* 659 F. Supp. 3d 1072, 1084–85 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time'").

***3. Plaintiffs have not alleged Defendant purposefully aided and abetted***

Plaintiffs' aiding and abetting theory under Section 631(a)(4)[5] independently fails for a separate reason: the Complaint does not allege Defendant had a *purpose* of aiding unlawful conduct. To establish liability under Section 631(a)(4), Plaintiffs must allege that Defendant had "both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) (emphasis added). Simply alleging that a website operator knowingly implemented third-party software on its website is insufficient to establish aiding and abetting liability. *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024); *Smith*, 754 F. Supp. 3d at 943 (allegations that defendant knew third-party software was placed on its website to "collect[] consumers' sensitive information" were insufficient to support "a plausible inference that [d]efendant knowingly agreed with or employed [the software provider] to engage in conduct that violated the wiretapping statute").

Because Plaintiffs do not allege interception of the "contents" of any communication, do not

[5] Because Plaintiffs have failed to establish a predicate violation of Section 631(a)(2) or (a)(3) by any third party, the derivative aiding and abetting claim under Section 631(a)(4) necessarily fails with it. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024); *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *8 (S.D. Cal. July 18, 2024) (same).

allege that Defendant or any third party intercepted communications "in transit," and have not alleged that Defendant had a purpose of aiding conduct that violates the wiretapping statute, Plaintiffs' Section 631(a) claims can and must be dismissed on these three independent grounds.

### C. Claim 4: Use of a Pen Register (California Penal Code § 638.51)

Plaintiffs have not stated a CIPA claim under Penal Code Section 638.51 because: (1) this section does not apply to internet communications, and (2) Plaintiffs have alleged third party interception of the contents of communications.

#### *1. Section 638.51 applies only to telephone communications*

The statutory text and structure, the legislative history, the context of California's overall regulatory scheme, and public policy all confirm that trap and trace devices are devices used by law enforcement to track who is calling whom *by telephone*. As a result, Section 638.51 does not apply to Plaintiffs' visit to the Bubba Gump website.

Defendant realizes the Court has considered this argument before; however, Defendant asks for the Court's consideration in light of the full scope of statutory and legislative history. The statutory text and structure demonstrate that Section 638.51 (which requires a court order for a trap and trace device to include "*the telephone line* to which the . . . trap and trace device is to be attached") was not intended to apply to internet communications. Section 638.51 expressly incorporates Sections 638.52 and 638.53 by reference, and those provisions—which are statutory text, not extrinsic history—cannot be coherently applied to a commercial website.

Section 638.52(d)(3) requires any court order authorizing a trap and trace device to identify "[t]he *number* and, if known, physical location of the *telephone line*." (emphasis added). No court order authorizing the tracking of website visitors could meaningfully specify a telephone line and number as Section 638.52(d) requires. This conclusion is reinforced by the Legislature's enactment of other, internet-specific CIPA provisions. In 2016 (one year *after* enacting Sections 638.50–638.53), the Legislature enacted Section 632.01—which expressly applies to "Internet Web sites." The Legislature has also repeatedly amended Section 638.52 (in 2016 and again in 2022) without removing its telephone-specific language, demonstrating that when the Legislature intends a CIPA provision to reach the internet, it expressly says so in the text. Nothing in this statutory text suggests

that these provisions were intended to apply to internet communications.

The legislative history confirms this natural statutory interpretation. Assembly Bill 929, which added Sections 638.50–638.53, was enacted expressly to authorize law enforcement to seek emergency orders for pen registers "used in telephone surveillance," and the Legislative Counsel's Digest stated that any location information obtained by a pen register is "limited to the information that can be determined from the telephone number." (*See* Request for Judicial Notice ("RJN") Ex. B at 4; Ex. G at 1.) Assembly and Senate bill analyses likewise describe pen registers and trap and trace devices exclusively as devices of "telephone surveillance" to "record incoming and outgoing phone numbers from a tapped line"—without mentioning websites, IP addresses, or any civil enforcement mechanism for website visitors. (*See* RJN Ex. A at 10 (referring to pen registers as devices that "track incoming and outgoing telephone calls"); Ex. B at 5 (referring to "telephone surveillance to record incoming and outgoing phone numbers from a tapped line"); Ex. C at 1 (referring to "telephone surveillance").) (*See also* RJN Ex. D at 7; Ex. E at 1; Ex. F at 7 (discussing same in the context of AB 1924).)

Plaintiffs' interpretation also creates irreconcilable tension with the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code Section 1798.100, which expressly permits businesses to collect consumer personal information including email addresses, geolocation data, and internet browsing and interaction data. Cal. Civ. Code Section 1798.140(v)(1)(A), (F), (G). It cannot be that businesses are simultaneously permitted under the CCPA to collect such information and forbidden to collect it except by court order under Section 638.51. The only reading of Section 638.51 consistent with the CCPA is one that does not impose criminal liability on the same conduct the CCPA expressly permits.

### ***2. Plaintiffs have not alleged use of a "trap and trace" device***

Plaintiffs' CIPA Section 638.51(a) claim additionally fails because a device that is capable of capturing the contents of communications is not a "pen register" under the statute.

Section 638.51(a) states that "a person may not install or use a pen register . . . without first obtaining a court order." Section 638.50(b) defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information. . . *but not the contents of*

*a communication*." Cal. Penal Code Section 638.50(b) (emphasis added).

Where a plaintiff alleges that the same device captures routing and addressing information and *also* collects and records the contents of communications, that technology falls outside the Section 638.50 pen register and trap and trace definitions. Plaintiffs allege the Third Party software code and cookies are pen registers. (Compl. ¶ 189). Yet simultaneously, Plaintiffs allege the Third Party software code and cookies collect the contents of communications. (Compl. ¶¶ 176–77). A plaintiff cannot simultaneously allege that the same technology captures "contents" for purposes of a Section 631(a) wiretapping theory and also qualifies as a "pen register" that captures *only* non-content data under Sections 638.51(a) and 638.50(b).

The statute's text is clear. A pen register is "a device or process" that records routing information "but not the contents of a communication." Cal. Pen. Code Section 638.50(b). The exclusionary phrase "but not" creates a definitional boundary: a device that records both routing information and contents falls outside the definition. To read the statute otherwise would render the phrase "but not the contents of a communication" entirely superfluous—a result the Legislature plainly did not intend. *See In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024) ("A core canon of statutory construction is the rule against surplusage: courts must construe a statute 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant'").

Indeed, a plaintiff's inability to plead these Sections 631(a) and 638.51(a) claims conjunctively has already been recognized by this Court. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851–52 (N.D. Cal. 2025); *cf. In re Apple Privacy Litigation*, 824 F. Supp. 3d 888, 898 (N.D. Cal. 2026).

Plaintiffs' allegations are distinguishable from cases finding a plausible Section 638.51(a) claim wherein plaintiffs alleged collection of only routing information—not contents. *See, e.g., Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928–29 (N.D. Cal. Oct. 9, 2025) (trackers "not alleged to collect the contents of [communications], *only* the user's IP address"); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (plaintiff alleged only collection of IP addresses). Here, by contrast, Plaintiffs allege the third party software code and

cookies collect *both* routing information *and* contents.

Plaintiffs cannot simultaneously allege unlawful interception of the contents of communications under Section 631(a) via software and cookies while also alleging no contents of communications were intercepted under Section 638.50(b) via that same software and cookies. Accordingly, Plaintiffs' CIPA pen register claim must be dismissed.

**D. <u>Claim 5: Common Law Fraud, Deceit, and/or Misrepresentation</u>**

As addressed *supra*, Plaintiffs' fraud claims fail for lack of particularity. Plaintiffs do not allege the *when* of their claims, providing the wide window of "during the last four years." Nor do they allege the *how* of their claims, as nearly every contention in the Complaint is alleged "on information and belief" based on an undated investigation by counsel's expert. Such vague allegations fail to meet the stringent requirements of Rule 9(b).

**E. <u>Claim 6: Unjust Enrichment</u>**

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Plaintiffs must identify the specific benefit received and a sufficiently pled and actionable misrepresentation. *See California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024). Plaintiffs do not plausibly allege that Defendant received and unjustly retained a concrete benefit at their expense. The Complaint's own allegations make clear that the primary monetary beneficiaries of the alleged data collection are the Third Parties—not Defendant. *Compare* (Compl. ¶ 43) *with* (Compl. ¶¶ 114–15). Plaintiffs allege *third parties* monetized user profiles to generate revenue, but merely allege Defendant used acquired data to optimize marketing campaigns. Plaintiffs do not allege Defendant built user profiles, profits from such profiles, or that Plaintiffs ever received a targeted advertisement. Further, because all of Plaintiffs' substantive claims fail, they "ha[ve] no viable basis for invoking entitlement to . . . unjust enrichment." *Forouzesh v. Starbucks Corp*., 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016).

**IX. CONCLUSION**

For the foregoing reasons, Defendant respectfully requests the Court grant this Motion and dismiss Plaintiffs' Complaint in its entirety.

Dated: July 17, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ Kristin P. Housh_*

WYNTER L. DEAGLE
KRISTIN P. HOUSH
LAUREN A. HOWES

Attorneys for Defendant, Landry's, LLC d/b/a Landry's, Inc. (erroneously sued as Landry's Inc.)