**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS CAMPOS and JENNIE CORONA-CANTU, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LANDRY'S, INC.,<br><br>Defendant. | Case No. 4:26-cv-04608-JST<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br><br>Hearing Date: November 5, 2026<br>Hearing Time: 2:00 p.m.<br>Hearing Location: Courtroom 6<br><br>Hon. Jon S. Tigar |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 2
III. ARGUMENT .......... 2
A. This Court Has Personal Jurisdiction Over Defendant. .......... 2
B. Plaintiffs' Claims Are Not Time-Barred. .......... 4
C. Plaintiffs Have Article III Standing. .......... 6
1. Plaintiffs allege concrete privacy injuries. .......... 6
D. Plaintiffs Sufficiently Plead Invasion of Privacy and Intrusion Upon Seclusion. .......... 8
1. Plaintiffs had a reasonable expectation of privacy. .......... 9
2. Defendant's conduct was highly offensive. .......... 10
E. Plaintiffs Sufficiently Plead CIPA Claims Under Section 631 .......... 11
1. Plaintiffs allege interception of contents. .......... 11
2. Plaintiffs allege interception while in transit. .......... 12
3. Plaintiffs sufficiently allege intent. .......... 14
F. Plaintiffs Sufficiently Plead CIPA Claims Under Section 638.51 .......... 15
1. Defendant caused the interception of signaling information. .......... 15
2. Section 638.51 applies to websites. .......... 16
G. Plaintiffs' Allegations Satisfy Rule 9(b). .......... 17
1. Plaintiffs sufficiently allege their fraud claims. .......... 18
H. Plaintiffs Sufficiently Allege Unjust Enrichment. .......... 19
IV. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Cases**

*ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999 (9th Cir. 2014) ..... 4

*Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645, 2026 U.S. Dist. LEXIS 126682 (N.D. Cal. Jun. 8, 2026) ..... 16

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) ..... 18

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) ..... 3, 4

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ..... 14

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ..... 18

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 12

*D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928 (N.D. Cal. 2026) ..... 9

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ..... 20

*Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..... 6

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) ..... 13

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ..... 6

*Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) ..... 13

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) ..... 5, 7, 8, 17

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ..... passim

*Goldstein v. Rumble Inc.*, No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489 (C.D. Cal. Apr. 24, 2026) ..... 12

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) ..... 12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*") ..... passim

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025) ..... 16

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ..... 12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ............ 12, 14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ............ 8, 10, 19

*Kohler v. Flava Enters.*,
No. 10-CV-0730 IEG (NLS), 2010 U.S. Dist. LEXIS 84033 (S.D. Cal. Aug. 13, 2010) ....... 5

*Ortiz v. Deckers Outdoor Corp.*,
No. 25-cv-09631-RFL, 2026 U.S. Dist. LEXIS 100845 (N.D. Cal. May 6, 2026) ............ 18

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) ......... 9, 10

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) ............ 8

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 70074 (C.D. Cal. Apr. 4, 2025) .......... 8

*Rodriguez v. Ford Motor Co.*,
No. 3:23-cv-00598-RBM-JLB, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ............ 11, 14

*Rosales v. FitFlop USA, LLC*,
882 F. Supp. 2d 1168 (S.D. Cal. 2012) ............ 7

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ............ 3

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ............ 8, 16

*Shah v. Politico, LLC*,
No. 25-cv-05213-NW, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) ............ 9

*Shahnaz Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ............ 14

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) ............ 8

*Six v. IQ Data Int'l, Inc.*,
129 F.4th 630 (9th Cir. 2025) ............ 6

*Smith v. Yeti Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ............ 15

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ............ 12, 13

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ............ 4

*Tavernetti v. Superior Court of San Diego Cty.*,
22 Cal. 3d 187 (1978) ............ 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............ 6

*Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ............ 4

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ............ 14

*United States v. Jones*,
565 U.S. 400 (2012) ........ 11

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 18

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652
(N.D. Cal. Oct. 16, 2025) ........ 7, 9, 16

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........ 10

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........ 5

**Statutes**

Cal. Civ. Code § 3294(b) ........ 10

Cal. Penal Code § 631 ........ 14, 19

Cal. Penal Code § 631(a) ........ 14, 16

Cal. Penal Code § 638.50(b) ........ 18, 19, 20

Cal. Penal Code § 638.51 ........ 17, 19, 20

Cal. Penal Code § 638.51(a) ........ 18

**Rules**

Fed. R. Civ. P. 8 ........ 2, 12

Fed. R. Civ. P. 9(b) ........ 2, 8, 9, 12

## I. INTRODUCTION

Defendant affirmatively represented that Plaintiffs could choose to protect their data from Third Parties, and that Defendant would honor that choice, but Defendant violated that promise by permitting third-party cookies to be placed on Plaintiffs' devices anyway. As a result, Third Parties surreptitiously took Plaintiffs' data while they used the Website. By presenting Plaintiffs with a choice, and then, unilaterally and without disclosure, refusing to honor their choice, Defendant lulled Plaintiffs, and those similarly situated, into a false sense of security while depriving them of the control they believed they had over their own information.

This Court is familiar with virtually every argument Defendant presents because it addressed them in a similar case: *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ("*Motorola*"). There, this Court confirmed that it had personal jurisdiction over a Defendant where, as here, Plaintiffs allege that Defendant was aware it was collecting information of California users, expressly designed its Websites to collect data from California users as evidenced by claiming compliance with California privacy law, and knowingly collected the data of California residents because its website collected IP addresses and geolocation data that revealed where the users resided. The Court further rejected identical standing arguments, finding that a privacy invasion such as the one alleged here is a sufficiently concrete injury to confer standing. The Court also rejected arguments that common law privacy claims failed, reasoning it was "premature" to dismiss claims based on a determination of how offensive or serious the privacy intrusion is. *Id.* at *26. When considering whether CIPA is limited to telephones, as Defendant proffers here, the Court concluded that the plain language of the statute "includes data collection tools beyond those the [sic] record information from telephones." *Id.* at *30. And, addressing similar fraud claim arguments, the Court found materially similar allegations sufficient to plead the who, what, when, and where of the claim.

Defendant's remaining arguments fare no better. For example, Defendant argues that Plaintiffs' claims are time-barred, but Plaintiffs' Complaint does not admit an impenetrable statute-of-limitations defense, and Plaintiffs have adequately pleaded the delayed discovery rule.

Defendant then argues that Plaintiffs do not plead facts about their Website interactions with sufficient specificity. But each argument ignores express allegations to the contrary. Finally, Defendant entirely ignores the allegations of its own egregious benefit of the data collection in arguing for dismissal of Plaintiffs' unjust enrichment claims. None of Defendant's arguments justify dismissal, much less Defendant's request for dismissal without leave to amend.

## II. FACTUAL BACKGROUND

When consumers, including Plaintiffs, visited the Websites, a popup cookie consent banner immediately appeared, stating that the site used cookies to "enhance user experience" and "analyze performance and traffic," and that data was shared with "social media, advertising and analytics partners." Compl. ¶¶ 1, 31, 121, 131. Rather than clicking "Accept Cookies," users could instead select "Do Not Sell My Personal Information," which opened a "Manage Consent Preferences" window. *Id.* ¶¶ 1, 31–32, 122, 132. There, users could opt out of the "Sale of Personal Data" and associated cookies—including Performance and Targeting cookies—by toggling them off. *Id.* ¶¶ 3, 6, 30, 33–34, 123, 133. Based on these representations, Plaintiffs and other users believed Defendant would not allow third parties to access their Private Communications with the Websites (including browsing and visit history, website interactions, user input, demographic and behavioral data, device information, referring URLs, session data, user identifiers, and geolocation data), and that they could opt out of the sale or sharing of their personal information. *Id.* ¶¶ 25, 35, 123–124, 133–134.

These representations were false. *Id.* ¶¶ 2, 36. Defendant caused third-party tracking cookies—including those of Meta, Google Analytics, and DoubleClick—to be placed on users' browsers and transmitted user data to these third parties. *Id.* ¶¶ 3–4, 37–38, 40–42, 45, 63. Contrary to its promises, Defendant knowingly enabled third parties to collect Website visitors' Private Communications in real time. *Id.* ¶¶ 4, 21, 25, 38, 126, 136.

## III. ARGUMENT

### A. This Court Has Personal Jurisdiction Over Defendant.

Where—as here—Defendant's personal jurisdiction challenge is based on written materials rather than an evidentiary hearing, "uncontroverted facts in the complaint must be taken

as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiffs' favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A defendant is subject to specific jurisdiction if it (1) "purposefully avails [itself] of the privilege of conducting activities in" or "purposefully direct[s]" its activities "toward" the forum state; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750–51 (9th Cir. 2025) (en banc) (citing *Schwarzenegger*, 374 F.3d at 802).

The Complaint establishes that Defendant purposefully directs its activities toward California. Preliminarily, Defendant's consent preferences window explicitly names California law when explaining users' opt out rights, stating "[u]nder the California Consumer Privacy Act, you have the right to opt out of the sale of your personal information to third parties. . . . Additionally, you may contact our legal department for further clarification about your rights as a California consumer by using this Exercise My Rights link." Compl. ¶ 33. Defendant's privacy policy states that IP addresses are collected and Defendant uses "this information to understand general usage and volume statistics," and to "serve advertisements on our behalf across the Internet and in mobile applications." Compl. ¶ 29. As this Court recognized in *Motorola*, "claiming compliance with California law" . . . "may serve as evidence that a defendant expressly aimed its conduct toward the forum state." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *22 (quoting and citing *Briskin*, 135 F.4th at 758 n.17.). Despite disclaiming ownership of the California servers, Defendant nonetheless relies on California servers to route data, furthering its purposeful availment.

Defendant's use of a declaration to rewrite what it supposedly does is fraught with red herrings. Preliminarily, the entire declaration is in present tense and offers nothing about the Websites' operation during the Class Period. The declaration uses undefined and vague terms such as "geolocation detection system," relies on carefully selected verbs (cabining its denial to storing or processing), and is directly contradicted by the allegations in the Complaint. *See* Compl. ¶¶ 18–20 (Defendant collects IP addresses). But regardless of what Defendant's first party cookies do, its use of third party cookies, as alleged in the Complaint, forecloses its supposed

factual statements. Defendant relies on Third Party cookies "to provide analytics and advertising services and serve advertisements on our behalf across the Internet and in mobile applications." Compl. ¶ 29. And, the complaint shows that third parties also collect IP addresses and geolocation information. *See, e.g.*, Compl. ¶¶ 75 (Google collects geolocation data); ¶ 76 (cookie collected page title that included "Sacramento CA Hours + Location – Joe's Crab Shack.").

Defendant's attempt to disclaim its "monetization of [] data through California commercial relationships" is specious. Its operation of dozens of restaurants throughout California demonstrates the importance of Californians to its model and it relies on its ability to advertise to those Californians to maintain its business. *See*, *e.g.*, Compl. ¶ 11 (Defendant derives revenue from products and services in California).

Under controlling law, a website that is designed to detect and behave differently toward California users is "an interactive platform that 'expressly aims its wrongful conduct toward'" California by Defendant's "own choice." *Briskin*, 135 F.4th at 755. Defendant has thus "purposefully directed" its conduct into California. *Id.* Further, because the harms the Complaint alleges stem from Defendant's direction of the Website into California, the claims arise out of and relate to Defendant's activities in California.

**B. Plaintiffs' Claims Are Not Time-Barred.**

Dismissal based on the statute of limitations at the pleadings stage is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint," and Defendant cannot meet its burden here. *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (emphasis added); *see also Turner v. Google LLC*, 737 F. Supp. 3d 869, 877 (N.D. Cal. 2024) ("the defense generally cannot be asserted on a Rule 12(b)(6) motion.").

Here, Defendant asserts that Plaintiffs' claims may be time-barred because the Complaint alleges only that Plaintiffs visited the Bubba Gump Website "on one or more occasions during the last four years," without identifying a specific date. Compl. ¶¶ 119, 129. But Plaintiffs are

"not required to plead around anticipated affirmative defenses, including the statute of limitations," and the Court may not infer untimeliness from the absence of a more specific date. *Kohler v. Flava Enters.*, 2010 U.S. Dist. LEXIS 84033, at *3 (S.D. Cal. Aug. 13, 2010). Either way, that four-year window "includes the past two years or one year, so it is entirely possible, from the face of the complaint, that [Plaintiffs'] claims are timely." *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1131 (N.D. Cal. 2025).

Plaintiffs also properly plead exceptions to the statute of limitations, including delayed discovery. The delayed discovery rule tolls the statute of limitations where plaintiffs plead facts which show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010). Here, Plaintiffs allege that they "were unaware that, despite rejecting all non-strictly necessary cookies on the Websites, Defendant nonetheless caused third-party cookies to be sent to their browsers, stored on their devices, and transmitted to the Third Parties along with their private user data," and that they "could not reasonably have discovered this conduct at the time of their visits to the Websites because it occurred through hidden, technical processes not visible to ordinary users." Compl. ¶ 15. Plaintiffs further allege that "[n]othing about Plaintiffs' experiences on the Websites would have alerted a reasonable user that their selections were not being honored," and that Plaintiffs "lacked the technical expertise and specialized tools necessary to determine whether the Websites honored their opt-out selections or instead continued transmitting their data notwithstanding those selections, and they did not discover Defendant's conduct until a later investigation revealed it." *Id.* This District has found such allegations sufficient to trigger the delayed discovery rule. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 870 (N.D. Cal. 2025) ("*Haleon*") (allegations that plaintiff rejected the cookie-enabling feature contradict a defendant's argument that plaintiff had "actual notice"). This is more than enough to overcome the statute of limitations at the pleading stage.

Plaintiffs also allege facts sufficient to plead tolling based on Defendant's own concealment: Defendant "affirmatively represented that users could 'Reject All' non-strictly necessary cookies, including Performance and Targeting cookies, while simultaneously

concealing that such tracking would occur regardless of users' selections," and that "combination of misrepresentation and omission prevented Plaintiffs from discovering their claims earlier." Compl. ¶ 17. Plaintiffs further allege that on November 11, 2025, Defendant was notified of the conduct alleged in the Complaint by Plaintiffs' counsel, and that, "[d]espite this notice, Defendant did not disclose this conduct to users." Compl. ¶ 16. The statute of limitations is tolled where a plaintiff alleged that a defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that, "despite her due diligence, she did not learn that defendants' proprietary technology was intercepting her [] information until shortly before" filing the lawsuit. *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244, 1255–56 n.6 (N.D. Cal. 2024).

**C. Plaintiffs Have Article III Standing.**

**1. Plaintiffs allege concrete privacy injuries.**

Invasions of privacy have long been recognized at common law as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) (quoting *TransUnion*). This right to privacy "encompass[es] the individual's control of information concerning his or her person." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (citation omitted). As a result, the Ninth Circuit has specifically held that violations of CIPA suffice to confer Article III standing. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("*In re Facebook*") ("[T]he legislative history and statutory text demonstrate that . . . the California legislature intended to protect . . . historical privacy rights when [it] passed CIPA.").

Defendant surreptitiously caused third-party tracking cookies to be placed on Plaintiffs' devices after they explicitly rejected such cookies. Compl. ¶¶ 1–6, 36–38, 122–127, 132–137. These cookies caused Third Parties to collect large swaths of Plaintiffs' data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data," despite Defendant's explicit representation that it would honor Plaintiffs' rejection of such cookies. Compl. ¶¶ 25, 35-38.

Courts in this District, including this one, have repeatedly found standing in cases where plaintiffs relied on identical false privacy promises. *See, e.g.*, *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16–17 ("[A]llegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Haleon*, 815 F. Supp. 3d at 859 (same); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025) ("*Dollar Tree*") (same). Such "'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data,' [which] can be quite sensitive; loss in the privacy of such data supports Article III standing[.]" *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *29 (citing *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *6), *accord In re Facebook*, 956 F.3d at 603, 605 (gathering "an enormous amount of individualized data" that could potentially "divulge a user's personal interests, queries, and habits on third-party websites operating outside of [Defendant's] platform").

Defendant asserts that Plaintiffs lack standing because they did not allege "what specific personal information he or she provided why that information carries a protectable privacy interest, and how it was intercepted or improperly disclosed." MTD at 9. To the contrary, as here, where the underlying claims involve misrepresentation, examples suffice at the pleading stage. *See*, *e.g.*, *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175–76 (S.D. Cal. 2012) (allegations sufficed when plaintiffs provided reproductions of a defendant's advertisements throughout the complaint). This is especially so because, unlike a "tester" who visits a website merely to test or evaluate a defendant's privacy practices, Plaintiffs' visits to the Bubba Gump Website were "consistent with an ordinary Website user's visits" seeking information about restaurant brand and menu options, Compl. ¶¶ 119–120, 129–130, and Plaintiffs lack the independent ability to know how the Website is programmed and what of their information Defendant allowed Third Parties to access. Compl. ¶¶ 128, 138. To the extent that Defendant argues that Plaintiffs must allege what specific information Defendant misappropriated with greater particularity, that would essentially vitiate their standing, as it would require Plaintiffs to

record their network activity at all times, expecting Defendant to disregard their privacy elections. *See Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 70074, at *2 (C.D. Cal. Apr. 4, 2025) (no Article III standing when a "tester" expected to be harmed by privacy violations).

Further, the invasion was highly offensive. Not only did Defendant cause data to be taken by Third Parties it promised would not receive it; the intrusion was not limited to a single Website visit. Plaintiffs allege the "third-party cookies cause the Third Parties to track users' behavior across the Internet and across time." Compl. ¶ 43. District courts uniformly recognize this mass *accumulation* of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. July 28, 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive.").

Moreover, all of the cases Defendant relies upon did not involve defendants explicitly offering users a false choice to opt out of sharing their information. Indeed, courts in this District have considered and rejected similar attempts to invoke *Popa v. Microsoft Corporation*, 153 F.4th 784, 786–87 (9th Cir. 2025), based on this critical distinction. *See, e.g.*, *Haleon*, 815 F. Supp. 3d at 867 ("*Popa* never purported to have expressly 'reject[ed]' the tracking technology at issue."); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("*MyFitnessPal*") ("misrepresenting how private information will be used can constitute such an invasion of privacy[.]") (internal citations omitted).

**D. Plaintiffs Sufficiently Plead Invasion of Privacy and Intrusion Upon Seclusion.**

To assert their common law privacy claims, Plaintiffs must show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606. Virtually every court in this District, including this one, to address arguments such as those made by Defendant here has rejected them. *See*, *e.g.*, *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27; *Haleon*, 815 F. Supp. 3d at 868; *MyFitnessPal*, 824 F. Supp. 3d at 917; *D'Antonio v. Smith & Wesson Inc.*, 820

F. Supp. 3d 928, 935 (N.D. Cal. 2026) ("*Smith & Wesson*"); *Shah v. Politico, LLC*, 2026 U.S. Dist. LEXIS 25740, at *13 (N.D. Cal. Feb. 6, 2026) ("*Politico*"); *Pemberton v. Rest. Brands Int'l, Inc.*, 2025 U.S. Dist. LEXIS 230964, at *15–16 (N.D. Cal. Nov. 24, 2025).

The reason courts consistently find these similar allegations sufficient to state a claim is that the conduct alleged here is a textbook example of an invasion of privacy: Defendant promised Plaintiffs that they could reject cookies, but then immediately caused non-necessary (by Defendant's own definition) Third Party cookies to be placed on their devices and browsers anyway, and enabled Third Parties to collect broad swaths of data that Plaintiffs asked to keep private. *See* Compl. ¶¶ 30 (defining strictly necessary cookies); 45–96 (explaining Third Party cookies Defendant caused to be placed). Importantly, as this Court recognized, "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (citation omitted).

**1. Plaintiffs had a reasonable expectation of privacy.**

Plaintiffs had a reasonable expectation of privacy based on both the information at issue and the manner in which Defendant took it. Most importantly, Defendant created this expectation by presenting the Website's users, including Plaintiffs, with the option to opt out of cookies. *See, e.g.*, *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *38 ("[Defendant] itself creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to 'Reject Advertising Cookies.'"). Moreover, courts have continually recognized that allegations that a defendant "allegedly compiled highly personalized profiles from sensitive browsing histories and habits" suffice "to bring claims for invasion of privacy [and] intrusion upon seclusion[.]" *In re Facebook*, 956 F.3d at 604; *see* Compl. ¶ 5 (explaining Third Parties' compilation of user data into consumer profiles and audience segments). Further, Plaintiffs included examples of the specific categories of data gathered after users opt out of cookies, including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and geolocation data. Compl. ¶ 25. Plaintiffs also give

examples of their own data that was taken through the network-traffic screenshots incorporated into the Complaint. Compl. ¶¶ 40 (screenshots depicting network traffic from the Bubba Gump Website), 47–59, 67–75.

Defendant ignores the key distinguishing factor between this case and the cases on which it relies: its own promise to honor Plaintiffs' rejection of non-strictly necessary cookies, which created the expectation of privacy. Defendant's "reliance on cases like . . . *Hammerling* . . . is misplaced" because it did not "involve[] a specific promise that users would not be tracked in specific ways." *Smith & Wesson Inc.*, 820 F. Supp. 3d at 935; *see also Wiley*, 826 F. Supp. 3d at 1133 (same).

**2. Defendant's conduct was highly offensive.**

"Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as . . . the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook*, 956 F.3d at 606 (citation omitted). Typically, this "cannot be resolved at the pleading stage[.]" *Id. accord Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) ("is indeed a factual question best left for a jury"); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (courts are "reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is").

Plaintiffs expressly rejected Defendant's third-party cookies, but Defendant tracked them anyway, violating its explicit promises. *See* Compl. ¶¶ 1–6, 35–38, 122–127, 132–137; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *16 (promise that "users could opt out of the sale/sharing of their personal information and opt out of all non-required cookies" and then proceeding to allow cookie storage and transmittal despite Plaintiffs' opt-out "would be highly offensive."). Plaintiffs' data was collected to create "consumer profiles containing detailed information" to "target those users with advertisements tailored to their consumer profiles and audience segments." Compl. ¶¶ 5, 43–44, 113–118. This profiling is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe*, 668 F. Supp. 3d at 942; *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18; *see also United States v. Jones*, 565 U.S. 400, 418

(2012) (Sotomayor, J., concurring) ("I for one doubt that people would accept without complaint the warrantless disclosure []of a list of every Web site they had visited in the last week, or month, or year.").

Defendant offers no precedent establishing otherwise. *Cf. Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 994 (9th Cir. 2023) (recognizing standing in data collection cases where statutes recognize the injury); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016-17 (N.D. Cal. 2012) (did not involve users' express rejection of consent).

**E. Plaintiffs Sufficiently Plead CIPA Claims Under Section 631.**

Wiretapping under the fourth clause of Section 631(a) prohibits aiding others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598-RBM-JLB, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Plaintiffs allege that Defendant aided and abetted the Third Parties' violations of the second and third clauses of Section 631(a). Specifically, third-party cookies and corresponding software code are the methods by which Defendant transmits the contents of Plaintiffs' communications so they can be read by Third Parties "in real time," "while those communications are in transit," "as [they] browsed the Website[,]" in an unauthorized manner and without Plaintiffs' consent. Compl. ¶¶ 4, 25, 28, 97, 126, 136, 176. Plaintiffs further allege how this process "necessarily require[s] contemporaneous access to the contents of the communications while they are in transit," and set forth the specific HTTP network traffic transmissions demonstrating how and when the transmission occurred. *Id.* ¶ 97; *see also id.* ¶¶ 41, 46–96.

**1. Plaintiffs allege interception of contents.**

Plaintiffs allege that the cookies transmitted detailed information about the Website pages and products that Plaintiffs and others viewed, including Website interactions, user input data, interests and preferences, and the specific webpage being visited. Compl. ¶¶ 25, 46–59, 64–81, 92–96. Courts consider this type of user input data "contents" for purposes of Section 631. *See,*

*e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) (explaining URL data may contain communication "contents" if a user's search terms are included); *Goldstein v. Rumble Inc.*, 2026 U.S. Dist. LEXIS 113489, at *11 (C.D. Cal. Apr. 24, 2026) ("Several other courts in the Ninth Circuit have concluded that detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications."); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) (URLs that reveal a user's queries reflect the "contents" of a communication).

To the extent Defendant asserts that Plaintiffs' claims fail because they did not identify the exact communications intercepted, courts have consistently refused to require plaintiffs to plead the exact contents of their communications with websites. *See*, *e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) ("[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications"; plaintiff "merely needs to show that the contents were not record information such as her name and address"); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) (same). Here, Plaintiffs allege specific categories of Facebook and Google request data that were transmitted after Plaintiffs rejected cookies, including the specific webpage viewed, the referring URL, timestamps, browser and device identifiers, and cookie values. Compl. ¶¶ 46–59, 67–81. Plaintiffs also included screenshots showing how the Website's software captured and transmitted that content. *Id.* This is more than sufficient to allege contents.

**2. Plaintiffs allege interception while in transit.**

Preliminarily, intercepting communications while in transit certainly qualifies as a violation of CIPA, but "divulging the contents of an intercepted communication is an independent act that further intrudes on the privacy of the parties to the communication," and is also "illegal under section 631, subdivision (a)." *Tavernetti v. Superior Court of San Diego Cty.*, 22 Cal. 3d

187, 193 (1978). "This is the rule regardless of the original legality of the interception." *Id.* Defendant did both.

Plaintiffs detail the real-time interception and reading of contents of communications, explaining that the Third Parties "operate large-scale data ingestion systems designed to receive, read, and act upon incoming data streams in real time, as the data is transmitted over the network, before it is committed to storage. As the user data is transmitted over the wire, it is transmitted as a raw payload that cannot be used until the Third Party reads and processes it using at least the steps described [in the Complaint]." Compl. ¶ 97 (referencing paragraphs 98–108, which describe how these systems read the data to transform, deduplicate, validate, filter, and analyze the communications). "[A]llegations that [communications] are intercepted in real time through the use of computer code provide[] sufficient factual detail to support the 'in transit' requirement at the pleadings phase." *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (same); *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17 ("the key to the interception analysis is whether the plaintiff alleges that transmission was simultaneous.").

To the extent Defendant contends that the Complaint contains no allegations of Defendant's own direct interception of communications in transit, Plaintiffs do not proceed under the second or third clauses of Section 631(a) as against Defendant directly; rather, Plaintiffs allege that Defendant willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs under the fourth clause of Section 631(a). Compl. ¶¶ 175, 178–180. "[A] pleading standard [requiring explanation of how and when interception occurs] would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15.

Defendant's attack of the allegations also relies on cherry picking to serve its conclusion. Plaintiffs allege that "the Third Parties employ real-time stream processing platforms specifically designed to operate on data 'in flight'—that is, after it is transmitted from a user's browser but

before it is committed to the Third Parties' storage." Compl. ¶ 102. Plaintiffs explain examples of several of the "in flight" platforms, including those of Facebook and Google, both of which are Third Parties in this case. *See* Compl. ¶¶ 103-107 (describing Facebook and Google platforms); ¶ 3 (defining Third Parties). This is far from hypothetical or conclusory and sufficient to put Defendant on notice.

**3. Plaintiffs sufficiently allege intent.**

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act[.]" *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quotation omitted). The Ninth Circuit rejected the notion "that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful' . . . Rather, the statute only requires 'an intentional act, defined as an act that is being done on purpose.'" *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2016)). Plaintiffs allege that Defendant "voluntarily integrated 'third-party resources' from the Third Parties into its Websites' programming," and that Defendant's "use of the third-party resources on the Websites is done so pursuant to agreements between Defendant and those Third Parties." Compl. ¶ 21. These are precisely the allegations necessary to show intent at the pleadings stage. *See, e.g.*, *Rodriguez*, 2024 U.S. Dist. LEXIS 218685, at *26–27 (defendant "plugged [the third-party's] Application Programming Interface into its Website"). This is consistent with decisions holding that pleading that a defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication" satisfies intent under CIPA. *See, e.g.*, *James*, 701 F. Supp. 3d at 953–54 (rejecting the argument that a defendant "cannot be held liable under . . . CIPA unless it intended to have [a third party] intercept the information at issue," because "it can be reasonably inferred that [defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information . . . so that [defendant] could market to and attract new customers.").

Defendant's interpretation of *Smith v. Yeti Coolers, LLC* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like Defendant here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" 754 F. Supp. 3d 933,

942 (N.D. Cal. 2024). But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting . . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs allege more than "some" level of intent and knowledge (as explained above) because Defendant owns and operates the Websites and installed the third-party resources which caused the Third Parties to track the Websites' users.

**F. Plaintiffs Sufficiently Plead CIPA Claims Under Section 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this definition by alleging that the third-party cookies and the corresponding software code Defendant caused to be installed, and that cause the Third Parties to attach cookies, operate as "pen registers" because they are processes that record signaling and addressing information, which is not the content of the electronic communications being transmitted from Plaintiffs' devices. *See*, *e.g.*, Compl. ¶¶ 109–112 (detailing the signaling and addressing information, including TCP and/or UDP port numbers, TCP connections, HTTP request header metadata, and network-level and transport-level routing and addressing metadata associated with communications).

**1. Defendant caused the interception of signaling information.**

Defendant asserts that Plaintiffs have not shown that its trackers are pen registers because they capture the contents of communications, but Plaintiffs identified and described a variety of Third-party cookies, including ones that transmit contents and ones that transmit signaling and addressing information. Compl. ¶¶ 46–59, 67–81, 109–112. Numerous courts have repeatedly accepted similar allegations and rejected arguments like Defendant's as contrary to the statute. *See*, *e.g.*, *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025) ("If

the various functionalities within the [tracking software] operate independently from one another, as plaintiffs plausibly allege, the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users' communications."); *MyFitnessPal*, 824 F. Supp. 3d at 920 (applying *In re Meta Pixel* to reject argument that cookies that collect both contents and signaling information cannot be pen registers); *Wiley*, 826 F. Supp. 3d at 1137 (same); *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *50 ("Some of these data may be contents, while others may not be. Plaintiffs are permitted to plead both causes of action and rely on different cookies—transmitting different data—to support each cause of action."); *Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645, 2026 U.S. Dist. LEXIS 126682, at *17 (N.D. Cal. Jun. 8, 2026) (finding plaintiffs sufficiently alleged "dialing, routing, addressing, and signaling information" where "[p]laintiffs allege that their IP addresses were tracked").

**2. Section 638.51 applies to websites.**

Defendant argues "Section 638.51 applies only to telephone communications." MTD at 17. However, as this Court ruled, "[Defendant] argues that the legislative history of Section 638.51—which discusses pen registers in relation to telephones—indicates that the statute applies only to telephones. The Court disagrees." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30 (citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023)). Other courts in this District agree that internet trackers can be pen registers. *See*, *e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). This is because "California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Cal. Pen. Code § 638.51(b)). "[T]he Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information

transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Fandom*, 754 F. Supp. 3d at 929. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*. Defendant wholly ignores the "device *or process*" definition, instead only arguing that the historical *device* aspect of the definition precludes its application. Like the plaintiffs in *Motorola*, Plaintiffs allege that the Third-Party cookies and the corresponding software code installed by Defendant on its Website are each a "device or process."

To the extent Defendant claims Section 638.51 is ambiguous and urges the Court to consult legislative history, the definition of a pen register is clear, so the Court's "analysis must begin with the statutory text, and if that text is clear, must end there." *Fandom*, 754 F. Supp. 3d at 931 ("Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register."). Courts in this District have "considered and rejected [the argument that the definition of a pen register is ambiguous] multiple times." *Haleon*, 815 F. Supp. 3d at 868. Even if the definition of a pen register were ambiguous, the Ninth Circuit and numerous courts in this District have concluded that its "legislative history and statutory text demonstrate that . . . the California legislature intended to protect these historical privacy rights when they passed . . . CIPA." *In re Facebook*, 956 F.3d at 608; *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30. Defendant's assertion that Plaintiffs' interpretation of CIPA renders the California Consumer Privacy Act ("CCPA") a nullity fares no better. MTD at 18. This mischaracterizes Plaintiffs' Complaint, which is not premised on Defendant's failure to provide the opt-in consent CCPA requires; it is premised on Defendant's false promise to honor Plaintiffs' opt-out elections. This application of CIPA is entirely compatible with CCPA; one statute requires seeking consent, the other penalizes ignoring users' explicit non-consent.

**G. Plaintiffs' Allegations Satisfy Rule 9(b).**

Preliminarily, Plaintiffs' invasion of privacy, intrusion upon seclusion, and CIPA claims do not sound in fraud, so, as other courts in this District have recently concluded in a similar setting, "those claims are not subject to Rule 9(b)." *Ortiz v. Deckers Outdoor Corp.*, No. 25-cv-

09631-RFL, 2026 U.S. Dist. LEXIS 100845, at *2–3 (N.D. Cal. May 6, 2026) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). In *Ortiz*, the court reasoned that "the non-fraud claims do not 'rely entirely' on those misrepresentations. Instead, the other claims focus primarily on privacy-related harms resulting from the information gathering that was enabled by the cookies placed on plaintiffs' devices after they attempted to reject them." *Id.* The same is true here. Even if this Court believes that these claims must meet Rule 9(b), they do so, as explained herein.

**1. Plaintiffs sufficiently allege their fraud claims.**

Rule 9(b) requires "that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022) (quotation marks omitted). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

As this Court explained when addressing similar allegations, "[t]he complaint states that the 'who' is [Landry's]; the 'what' are misrepresentations by [Landry's] through the popup banner offering users the option to [decline or reject all cookies and tracking technologies in use on the Website,] the 'when' is the multiple occasions that [Plaintiffs] visited [Landry's] website [during the last four years]; the 'where' is on [Landry's] website; and the 'how' is through the storage of cookies on users' devices that transmit personal information about the users." *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *36-37.

Defendant takes issue with some allegations being based on "information and belief." But such allegations are proper where, as here, essential information is within the other parties' knowledge, and Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988). Plaintiffs provide screenshots of the banners and consent flow that they encountered when visiting the Website. They explicitly allege that when they visited the Website, it "presented [them] with Defendant's popup cookie consent banner, which provided the option to select the 'Do Not Sell My Personal Information' link."

Compl. §¶ 121, 131. The allegations state the language they encountered and the actions they took to reject all cookies. *Id.* ¶¶ 121-124, 131-135. Thus contrary to Defendant's claim that "nothing in the Complaint establishes that the cookie consent banner described—or the Privacy Policy referenced—reflects what Plaintiffs actually encountered on their undisclosed visit date," (MTD at 8) Plaintiffs have explained the exact language and process they engaged in during their visits.

Plaintiffs have also adequately pleaded when they visited the Website. Both Plaintiffs allege that they visited the Bubba Gump Website "on one or more occasions during the last four years" to seek information about a Landry's brand restaurant. Compl. ¶¶ 119, 129. This Court has found similar allegations sufficient at the pleading stage. *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *37.

### H. Plaintiffs Sufficiently Allege Unjust Enrichment.

To successfully plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs may bring an unjust enrichment claim because they allege that Defendant benefited from using their Private Communications, and that they lack the technical skills and knowledge to independently ascertain the full extent of this ongoing injury. Compl. ¶¶ 113–118, 128, 138, 214–223. Defendant's argument (with no factual support) that the third parties are the "primary monetary beneficiaries" does not overcome the Complaint's allegations that "Defendant uses this data to measure and optimize marketing campaigns, evaluate website design and product placement, and target specific users or groups of users with advertising. For example, Defendant can identify California users who visit webpages related to particular restaurant brands and menu offerings, and then target those users with advertisements for similar products both on the Websites and across unrelated third-party websites." Compl. ¶ 114. Thus, Plaintiffs have sufficiently alleged their unjust enrichment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety. If, in the alternative, this Court finds any claims in the Complaint insufficient, Plaintiffs request leave

to amend to cure any identified deficiencies. *See*, *e.g.*, *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (leave to amend is only properly denied "where the amendment would be futile").

Dated: August 21, 2026

**GUTRIDE SAFIER LLP**

*/s/ Hayley A. Reynolds*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111

*Attorneys for Plaintiffs*